IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DAVID BYRNE, on his own behalf and on behalf of all others similarly situated, | ) ) ) | Case No.: 3:10-cv-00337-JPG-CJP |
| | ) | |
| Plaintiff, | ) ) | CJRA TRACK:  D |
| v. | ) ) | PRESUMPTIVE TRIAL MONTH: 02/14/2012 at 9:00 a.m. in Benton, IL |
| CCC INFORMATION SERVICES INC. d/b/a CCC VALUESOURCE, | ) ) ) | JUDGE:  J. Phil Gilbert, District Judge Clifford J. Proud, Magistrate Judge |
| Defendant. | ) | |

## PLAINTIFF'S MEMORANDUM IN RESPONSE TO

## DEFENDANT'S MOTION TO DISMISS

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. FACTUAL OVERVIEW ......................................................................................1

III. STANDARD OF REVIEW ..................................................................................2

IV. ARGUMENT ........................................................................................................5

    A. Plaintiff's Fraud Claims Succeed ...............................................................5

        1. The Insurance Company's Reliance Upon CCC's Valuation
        Satisfies the Reliance Requirement .......................................................5

        2. Defendant Is Not Free to Lie, Regardless of the Nature of its Relationship
        with Plaintiff ........................................................................................10

        3. Plaintiff Has Sufficiently Alleged Damages .......................................11

    B. Plaintiff's Unjust Enrichment Claims Succeed ........................................11

    C. Plaintiff Has Standing to Pursue His Illinois Consumer
    Protection Act Claim Because The Bulk Of The Circumstances
    At Issue Occurred in Illinois ....................................................................12

    D. Plaintiff Allegations With Respect To The Breach Of
    The Duty Of Good Faith And Fair Dealing Are Appropriately
    Included In His Complaint.........................................................................15

V. CONCLUSION....................................................................................................16

Case 3:10-cv-00337-JPG -SCW    Document 24    Filed 09/10/10    Page 3 of 22

## <u>TABLE OF AUTHORITIES</u>

### <u>*Cases*</u>

*Anixter v. Home-Stake Prod. Co.,*
77 F.3d 1215 (10th Cir. 1996) ................................................................6

*Arnold Chevrolet LLC v. Tribune Co.,*
418 F. Supp. 2d 172 (E.D.N.Y. 2006) ........................................................6

*Ashcroft v. Iqbal,*
129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ..................................................3-4

*Avery v. State Farm Mutual Automobile Ins. Co.,*
216 Ill.2d 100 (2005) ......................................................................... 13-15

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007)............................................................................3-4

*Brooks v. Ross,*
578 F.3d 574 (7th Cir. 2009) ................................................................2-3

*Bunting v. Progressive Corp.,*
348 Ill. App. 3d 575 (Ill. App. Ct. 2004) ............................................9, 14-15

*Bush v. Teachers Ins. & Annuity Ass'n of Am.,*
2006 U.S. Dist. LEXIS 79534 (M.D. Ala. Oct. 30, 2006)..............................6

*Cancer Foundation, Inc. v. Cerberus Capital Management LP,*
559 F.3d 671 (7th Cir. 2009) ..................................................................14

*Chicago Export Packing Co. v. Teledyne Industries, Inc.,*
207 Ill. App. 3d 659 (Ill. App. Ct. 1st Dist. 1990)........................................7

*City of Monroe Employees Ret. Sys. v. Bridgestone Corp.,*
399 F.3d 651 (6th Cir. 2005) ................................................................. 6

*Connick v. Suzuki Motor Co.,*
174 Ill. 2d 482 (Ill. 1996)......................................................................11

*Erickson v. Pardus,*
551 U.S. 89 (2007)............................................................................3-4

*Fedders Corp. v. Elite Classics,*

279 F. Supp. 2d 965 (S.D. Ill. 2003)............................................................................5

*Goldberg v. 401 North Wabash Venture LLC*,
2010 WL 1655089 (N.D. Ill. Apr. 22, 2010) ........................................................2

*Hickman v. Wells Fargo Bank N.A.*,
683 F. Supp. 2d 779 (N.D. Ill. 2010) ..................................................................16

*Hirsch v. Optima, Inc.*,
397 Ill. App. 3d 102 (Ill. App. Ct. 1st Dist. 2009)..............................................6

*HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*,
131 Ill. 2d 145 (Ill. 1989)...................................................................................12

*Kurti v. Fox Valley Radiologists, Ltd.*,
124 Ill. App. 3d 933 (Ill. App. Ct. 2d Dist. 1984).........................................10-11

*LaSalle Business Credit, Inc. v. Lapides*,
2003 U.S. Dist. LEXIS 2901 (N.D. Ill. Feb. 27, 2003) .....................................16

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
513 F.3d 702 (7th Cir. 2008) ...............................................................................4

*May Liu v. Arrow Fin. Servs., LLC*,
2010 U.S. Dist. LEXIS 48241 (S.D. Tex. May 17, 2010) .................................7, 9

*Myers v. Travelers Prop. Casualty Corp.*,
Case No. 00 CH 2793 (Cook Cty. Cir. Ct. Sept. 25, 2001) ...............................10

*Nernberg v. Pearce*,
35 F.3d 247 (6th Cir. 1994) .................................................................................6

*Phillips v. Bally Total Fitness Holding Corp.*,
372 Ill. App. 3d 53 (Ill. App. Ct. 1st Dist. 2007)..............................................14

*Rodriguez v. Plymouth Ambulance Service*,
577 F.3d 816 (7th Cir.2009) ............................................................................3, 5

*Shannon v. Boise Cascade Corp.*,
208 Ill. 2d 517 (Ill. 2004)...............................................................................6, 10

*Smith v. Ethell*,
144 Ill. App. 3d 171 (Ill. App. Ct. 4th Dist. 1986) ...........................................7-8

*Stark Trading v. Falconbridge Ltd.*,
552 F.3d 568 (7th Cir. 2009) ...............................................................................7

*Stella v. LVMH Perfumes & Cosmetics USA, Inc.*,
564 F.Supp.2d 833 (N.D.Ill. 2008) ....................................................................... 13-14

*Swanson v. Citibank, N.A.*,
2010 U.S. App. LEXIS 15761 (7th Cir. Ill. July 30, 2010) ................................ 5

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) ................................... 4

*United States v. Fumo*,
U.S. Dist. LEXIS 51581 (E.D. Pa. June 17, 2009) ......................................... 6

*Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*,
536 F.3d 663 (7th Cir. 2008) ............................................................................ 2

## *Other Authorities*

Fed. R. Civ. P. 8 ....................................................................................................... 2-4

Illinois Consumer Protection Act
815 ILCS § 505/2 ..................................................................................................... 5,

5 Charles Alan Wright & Arthur R. Miller,
Federal Practice and Procedure § 1215 (3d Ed. 2004) .................................... 4

COMES NOW Plaintiff David Byrne, and hereby submits the following memorandum in response to Defendant's Motion to Dismiss:

## I.    INTRODUCTION

The thrust of Plaintiff's Complaint is that Defendant has engaged in a custom and practice of systematically undervaluing vehicles that are deemed a "total loss" for insurance purposes with the knowledge, intent and expectation that its valuation will determine what Plaintiff and the class are paid on their insurance claims. Defendant argues that it is free to use biased, inaccurate or even fabricated valuations because those valuations are actually provided to third parties rather than directly to the class members, or that they have no liability because Plaintiff was aware that he was being bilked. The law, however, does not share this dismissive view of Defendant's deceptive conduct. Defendant's motion must therefore be denied.

## II.    FACTUAL OVERVIEW

CCC is in the business of providing purportedly unbiased valuations of vehicles that are deemed a total loss at the behest of insurance companies. *See Second Amended Complaint,*[1] ¶ 19. Plaintiff alleges that in the course of this process, Defendant has engaged in a systematic procedure by which it provides valuations that are false, fraudulent, and which, in fact, are designed to undervalue vehicles in favor of their insurance company clients. SAC ¶ 20. Plaintiff alleges that this is accomplished by, *inter alia*, using outdated data or incomparable vehicles and geographic markets to attempt to justify a deflated valuation. SAC ¶ 21(a), (b). Plaintiff further alleges that in some circumstances, Defendant has **completely fabricated** the data it uses to justify its valuations. SAC ¶ 21(c).

---

[1] All references herein to "SAC" refer to the Plaintiff's Second Amended Complaint [Doc. 6].

Plaintiff alleges that regardless of the mechanism that is used, CCC's valuations systematically and predictably come in under fair market value for the vehicles that are being evaluated. SAC ¶ 22. These valuations are slavishly relied upon by CCC's insurance carrier clients to determine what is paid to Plaintiff and the members of the class,[2] and they are therefore paid less for their total loss vehicles than they would were an actual, unbiased valuation performed. SAC ¶¶ 5, 25. Accordingly, Plaintiff brings this action on his own behalf and on behalf of a class of people all over the country that have had their vehicles appraised by CCC and thereby been compelled to accept less than appropriate value for their vehicles in insurance settlements when those vehicles have been declared a "total loss." SAC ¶¶ 1-2.

## III.   STANDARD OF REVIEW

The Federal civil system is based upon notice pleading. "As a general rule, in testing the sufficiency of a complaint, notice pleading remains the standard." *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663, 667 (7th Cir. 2008). Federal Rule of Civil Procedure 8(a) governs pleading standards, and "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court.'" *See Goldberg v. 401 North Wabash Venture LLC*, No. 09-C-6455, 2010 WL 1655089, at *1 (N.D. Ill. Apr. 22, 2010) (quoting *Brooks v. Ross*, 578 F.3d 574, 580

---

[2] Defendant's assertion that its valuations are used by its clients to "to try to persuade first-party insureds and third-party claimants in the claims adjustment process [to accept their offer]" reflects an unrealistic interpretation of the manner in which insurance claims are actually handled. As detailed herein, in the Complaint, and as common sense dictates, Plaintiff and the members of the class have zero bargaining power with respect to the valuation and as a practical matter, insurance companies offer claimants settlements based exclusively upon CCC's valuations on a take-it-or-leave-it basis, putting claimants in the untenable situation of taking a deflated settlement, or taking back a twisted hunk of metal for which there is no realistic market.

(7th Cir. 2009). Proper pleading does "not require heightened facts pleading of specifics." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"The Supreme Court has stated that to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Rodriguez v. Plymouth Ambulance Service,* 577 F.3d 816, 821 (7th Cir.2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility requirement does not equate to a "probability requirement," but simply requires "more than a sheer possibility that a defendant has acted unlawfully." *See Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). In determining whether a complaint states a plausible claim, the Court should draw on its "experience and common sense." *Id.* at 1940.

Since the filing of Defendant's motion, the Seventh Circuit has engaged in a more thorough discussion of impact of *Twombly* and *Iqbal* – or lack thereof – upon federal pleading standards:

> On the one hand, the Supreme Court has adopted a "plausibility" standard, but on the other hand, it has insisted that it is not requiring fact pleading, nor is it adopting a single pleading standard to replace Rule 8, Rule 9, and specialized regimes like the one in the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b)(2).

> Critically, in none of the three recent decisions – *Twombly, Erickson,*[3] or *Iqbal* – did the Court cast any doubt on the validity of Rule 8 of the Federal Rules of Civil Procedure. To the contrary: at all times it has said that it is interpreting Rule 8, not tossing it out the window. It is therefore useful to begin with a look at the language of the rule: (a) Claim for Relief. A pleading that states a claim for relief must contain:* * *

---

[3] *See Erickson v. Pardus,* 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007).

(2) a short and plain statement of the claim showing that the pleader is entitled to relief ....FED. R. CIV. P. 8(a)(2). As one respected treatise put it in 2004, all that is necessary is that the claim for relief be stated with brevity, conciseness, and clarity .... [T]his portion of Rule 8 indicates that a basic objective of the rules is to avoid civil cases turning on technicalities and to require that the pleading discharge the function of giving the opposing party fair notice of the nature and basis or grounds of the pleader's claim and a general indication of the type of litigation that is involved. . . .5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1215 at 165-173  (3d ed. 2004).

Nothing in the recent trio of cases has undermined these broad principles. As *Erickson* underscored, "[s]pecific facts are not necessary." 551 U.S. at 93. The Court was not engaged in a *sub rosa* campaign to reinstate the old fact-pleading system called for by the Field Code or even more modern codes. We know that because it said so in *Erickson*: "the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* Instead, the Court has called for more careful attention to be given to several key questions: what, exactly, does it take to give the opposing party "fair notice"; how much detail realistically can be given, and should be given, about the nature and basis or grounds of the claim; and in what way is the pleader expected to signal the type of litigation that is being put before the court?

This is the light in which the Court's references in *Twombly*, repeated in *Iqbal*, to the pleader's responsibility to "state a claim to relief that is plausible on its face" must be understood. *See Twombly*, 550 U.S. at 570; *Iqbal*, 129 S. Ct. at 1949. "Plausibility" in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not. Indeed, the Court expressly distanced itself from the latter approach in *Iqbal*, "the plausibility standard is not akin to a probability requirement." 129 S. Ct. at 1949 (quotation marks omitted). As we understand it, the Court is saying instead that the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself could these things have happened, not did they happen. For cases governed only by Rule 8, it is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences. *Compare Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 705 (7th Cir. 2008) (applying PSLRA standards).

The Supreme Court's explicit decision to reaffirm the validity of *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), which was cited with approval in *Twombly*, 550 U.S. at 556, indicates that in many straightforward cases, it will not be any more

difficult today for a plaintiff to meet that burden than it was before the Court's recent decisions.

*Swanson v. Citibank, N.A.*, 2010 U.S. App. LEXIS 15761, at *6-8 (7th Cir. Ill. July 30, 2010)

In reviewing a motion to dismiss under Rule 12(b)(6), this Court must accept as true the facts alleged in the complaint, drawing all reasonable inferences in the Plaintiff's favor. *See Rodriguez v. Plymouth Ambulance Service,* 577 F.3d 816, 820 (7th Cir.2009). It is of course inappropriate to resolve factual disputes in the context of a motion to dismiss, and the existence of factual disputes is itself a basis for denying Defendant's motion. *See Fedders Corp. v. Elite Classics*, 279 F. Supp. 2d 965, 971 (S.D. Ill. 2003) ("question of fact precludes dismissal of the claim at this stage of the proceedings.").

## IV.   ARGUMENT

### A.   Plaintiff's Fraud Claims Succeed

As a preliminary matter, Defendants' argument appears to intermingle the analysis directed to Plaintiff's claim under the Illinois Consumer Fraud Act ("ICFA"), which does not require a finding of reliance, and his common law fraud/omission claim, which does. *See* 815 ILCS § 505/2 (deceptive acts and practices "are hereby declared unlawful *whether any person has in fact been misled, deceived or damaged thereby*.") (emphasis added).  Regardless, under either theory, the extent to which *Plaintiff* actually relied upon the representations at issue to his detriment is secondary to the extent to which its client insurer carriers rely upon the valuations, which is what actually causes the harm to Plaintiff and the class.

### 1.   The Insurance Company's Reliance Upon CCC's Valuation Satisfies the Reliance Requirement

The gravamen of the Complaint is that Defendant made representations to third parties – the insurance carriers handling Plaintiff's property damage claim, and the claims of the members of the class – with the expectation, intent and knowledge that they would be relied upon in determining exactly how much the carriers would pay for a totaled vehicle which is, in fact, exactly what happens. Defendant asserts, in essence, that because the representations were not made directly to the plaintiff, it is absolved of liability. The law, however, does not take such a dismissive view of misrepresentations made to third parties. *See Arnold Chevrolet LLC v. Tribune Co.*, 418 F. Supp. 2d 172, 188 (E.D.N.Y. 2006) ("Defendants contend that a claim for fraud cannot be premised upon statements made to a third party. Defendants are mistaken."). Indeed, the Illinois Supreme Court has expressly recognized the concept of an "indirect deception," whereby the reliance of a third party to whom the representation is made is sufficient to satisfy the reliance requirement. *See Hirsch v. Optima, Inc.*, 397 Ill. App. 3d 102, 118-119 (Ill. App. Ct. 1st Dist. 2009) *citing Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517, 805 N.E.2d 213, 281 Ill. Dec. 845 (2004).[4] Accordingly, the representation made to Travelers, and

---

[4] *See also, e.g., Nernberg v. Pearce*, 35 F.3d 247, 251 (6th Cir. 1994) (reversing summary judgment in favor of defendant, noting "plaintiff may maintain an action for fraud even when a misrepresentation has not been made directly to the plaintiff but had instead been made to a third party with the intent and expectation that the misrepresentation would be repeated to induce reliance by a principle participant to a business undertaking . . ."); *Bush v. Teachers Ins. & Annuity Ass'n of Am.*, No. 1:05cv378-VPM, 2006 U.S. Dist. LEXIS 79534, at *14, n.9 (M.D. Ala. Oct. 30, 2006) (holding that fraud claim may arise from a misrepresentation made to a third party when there is sufficient evidence of an intent on the part of the speaker to communicate to the third party in such a way as to induce the plaintiff to act); *see also City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 686 n.29 (6th Cir. 2005) ("The requirement that the plaintiff allege that the defendant made a misrepresentation does not mean that the plaintiff must allege that the defendant communicated that misrepresentation directly to the plaintiff."); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1226 (10th Cir. 1996) ("There is no requirement that the alleged violator directly communicate misrepresentations to plaintiffs for primary liability to attach."); *United States v. Fumo*, No. 06-319, 2009 U.S. Dist. LEXIS 51581, at *151-52 (E.D. Pa. June 17, 2009) (approving jury instruction in criminal matter that "misrepresentation made to a third party may be sufficient if made to further the fraud...").

Travelers reliance thereon in determining how much it would pay to Plaintiff, satisfies the reliance element.

Additionally, to the extent that the amount Plaintiff was ultimately paid on his claim was based explicitly upon the valuation provided by CCC, Defendant's suggestion that Plaintiff did not rely upon its representations with respect to value is curious. While it is beyond dispute that Plaintiff did not *agree* with it, he did, in fact, *act* upon it, which is what is required. Given the facts and circumstances surrounding this transaction (which have not yet been developed through discovery), including the practical reality that the settlement was being offered on a take-it-or-leave-it basis, there remains an open fact question regarding whether the action Plaintiff took in reliance upon CCC's valuation was reasonable. *See e.g., Smith v. Ethell*, 144 Ill. App. 3d 171, 175 (Ill. App. Ct. 4th Dist. 1986) ("In determining whether reliance is reasonable, courts look to all the relevant circumstances surrounding the misrepresentation."). Indeed, many of the cases cited by Defendant were decided on more complete factual records, not at the motion to dismiss phase, underscoring the need to conduct further discovery before reaching these issues. *See generally Ethell* (following bench trial); *May Liu v. Arrow Fin. Servs., LLC*, 2010 U.S. Dist. LEXIS 48241 (S.D. Tex. May 17, 2010) (summary judgment).

Furthermore, notwithstanding that Plaintiff did, indeed, make it clear that he did not believe the proposed valuation was accurate, to the extent that he ultimately accepted it and obtained less than he would have had the valuation been fair and accurate, he has unquestionably been damaged. As such, there is a direct path between Defendant's valuation and the damage that Plaintiff has sustained. Plaintiff should not be punished

for seeing through Defendant's deception where, again, the settlement was offered on a take it or leave it basis.

Cases cited by Defendant do not hold to the contrary. In *Smith v. Ethell*, 144 Ill. App. 3d 171, 174-175 (Ill. App. Ct. 4th Dist. 1986), for example, the issue presented was whether plaintiffs' recalcitrance in investigating a suspected issue with the roof precluded them from asserting that they had been defrauded in entering into a real estate transaction. *Ethell*, 144 Ill. App. 3d at 174-75.[5] The court was critical of the plaintiff in that action for *ignoring* known issues; here, Defendant seeks to avoid liability on the basis that Plaintiff did exactly what the *Ethell* court suggested that those plaintiffs should have done – investigate.

The disparate circumstances between the parties in *Ethell* and in the case at bar also highlights another reason that the holding in *Ethell* is inapplicable here. In *Ethell*, had plaintiffs performed an investigation, they would have been free to walk away from the transaction.[6] In the case at bar, however, the parties have been foisted upon one another, and *even armed with the benefit of full information*, Plaintiff's alternative to accepting the deflated settlement under protest and without waiving his rights to recover his damages was to having a totaled vehicle for which there was no market returned to him, effectively foregoing any recovery at all. Of course, had Plaintiff gone that route, Defendant would no doubt have argued that he did not sustain any damage because he

---

[5] *Chicago Export Packing Co.* is similar in this respect. In that case, the defendant actually made statements to the plaintiff negating the alleged misrepresentations. *Chicago Export Packing Co. v. Teledyne Industries, Inc.*, 207 Ill. App. 3d 659, 664 (Ill. App. Ct. 1st Dist. 1990). Here, CCC continued to maintain that its valuation was accurate and the insurance carrier, in reliance upon CCC's representations of value, refused to increase its settlement offers.

[6] To the extent that the plaintiffs in *Stark Trading v. Falconbridge Ltd.*, 552 F.3d 568 (7th Cir. Wis. 2009), which was a Rule 10b-5 securities fraud suit, could have simply declined to purchase the stock at issue, that case is distinguishable on the same basis as *Ethell*.

96045.1                                          8

never accepted an offer based upon its valuation. Simply stated, Defendant's argument seeks to place the people impacted by its fraudulent valuations in an impossible situation.

*May Liu v. Arrow Fin. Servs., LLC*, 2010 U.S. Dist. LEXIS 48241, at *42 (S.D. Tex. May 17, 2010), is also unhelpful to defendant's position. In that case, which was essentially a malicious prosecution case which plaintiff attempted to cast as an action for fraud, the court based its decision not upon the absence of actual deception, but upon the fact that the damage she sustained did not stem from the representation itself. Specifically, plaintiff sought to recover the legal fees that were incurred in clearing her name in a collection suit that was erroneously filed against her. *May Liu*, 2010 U.S. Dist. LEXIS 48241, at *42 ("What she is alleging is not reliance on the misrepresentation that she owed the delinquent debt, but on the fact that Defendants filed a lawsuit that required her to retain counsel to defend her and to demonstrate that the accusation was false."). In the case at bar, in contrast, there is a direct relationship between Plaintiff's begrudging acceptance of CCC's valuation and the damages he sustained.

Neither of the cases cited by Defendant which were against CCC offer any meaningful guidance, either. In *Bunting*, for example, Plaintiff did not accept the valuation provided by CCC; to the contrary, he invoked the appraisal clause in his insurance contract, paid to have the vehicle appraised, and was ultimately paid a higher amount pursuant to that appraisal. *Bunting v. Progressive Corp.*, 348 Ill. App. 3d 575, 578 (Ill. App. Ct. 2004). Accordingly, there was no argument that plaintiff had relied to his detriment upon CCC's valuation because he was, in fact, paid in accordance with another appraiser's (higher) valuation. Of note, however, the court did deny the motion to dismiss as to the plaintiff's claim under the ICFA. *Id*. at 586.

The *Myers* case,[7] which was brought against CCC and Travelers, is similarly unhelpful. Apart from being nearly a decade old, and decided well before the Illinois Supreme Court expressly recognized the doctrine of "indirect deception" in *Shannon v. Boise Cascade Corp.*, *supra*, *Myers* is also distinguishable in two important respects. First and foremost, the *Myers* court expressly found that "Plaintiff makes no specific allegation in Count II of fraudulent misrepresentation or omission on the part of CCC." *See* Ex A to Def.'s Memo., p.3. In sharp contrast, Plaintiff in the instant case has indeed made such allegations as to CCC. See SAC ¶¶ 21, 42. Moreover, there is no indication in *Myers* that there were any allegations of outright fabrication of valuations. *See* SAC ¶¶ 21(c). While Plaintiff maintains that the inappropriate manipulation of accurate data is actionable, there can be no serious question that the complete fabrication of data to support CCC's bogus valuations invokes principles of law that would entitle Plaintiff to relief.

## 2. Defendant Is Not Free to Lie, Regardless of the Nature of its Relationship with Plaintiff

Defendant's argument with respect to whether or not CCC owes fiduciary duties to Plaintiff presents a bit of a red herring. Simply stated, Plaintiff does not assert in his complaint that Defendant stands as a fiduciary as to him. Plaintiff does allege, however, that Defendant, "by virtue of its experience, access to information, and superior bargaining position[,] owed Plaintiff and the class a duty of disclosure with respect to the true basis for its valuations." *See* SAC ¶ 43. It is clear that where one party is in a position of influence and superiority over the other by virtue of its experience and access to information, a duty to disclose exists. *See Kurti v. Fox Valley Radiologists, Ltd.*, 124

---

[7] *Myers v. Travelers Prop. Casualty Corp.*, Case No. 00 CH 2793 (Cook Cty. Cir. Ct. Sept. 25, 2001)

Ill. App. 3d 933, 938 (Ill. App. Ct. 2d Dist. 1984); *see also Connick v. Suzuki Motor Co.*,

174 Ill. 2d 482, 500 (Ill. 1996).  Accordingly, irrespective of whether or not a fiduciary

relationship exists as between Plaintiff and Travelers, the suggestion that Defendant is

free to systematically ignore its role as an impartial arbiter of value in favor of its insurer

clients in derogation of the rights of Plaintiff and the class is repugnant to the body of

consumer law upon which Plaintiff's complaint is based.

### 3.     Plaintiff Has Sufficiently Alleged Damages

Defendant's argument that Plaintiff has failed to allege that he would have acted

differently had he been fully aware misses the mark.  This argument is typically directed

to the question of damages – i.e., that if the claimant would have done the same thing

regardless of what information was available, there can be no claim of damage.  As set

forth in more detail herein, however, Plaintiff has very clearly alleged that he took less

than he was entitled and thereby sustained damages.  *See* SAC ¶¶ 5, 35, 39, 46, 53, 60.

Moreover, a complete reading of the Complaint, combined with a recognition of the

realities of the disparate bargaining power in the context of negotiating a settlement with

respect to a total loss vehicle, makes it clear that Plaintiff and the Class only acted as they

did for lack of any other viable alternative.  *See e.g.*, SAC ¶ 28.  As such, Defendant's

argument reflects a disconnect with reality, and Plaintiff's allegations, taken as a whole,

satisfies his pleading requirements on this point.

### B.     Plaintiff's Unjust Enrichment Claims Succeed

Defendant provides this Court with an abbreviated list of the circumstances under

which an action for unjust enrichment can be based upon the transfer of a benefit by a

third party other than the plaintiff, and then devotes the entirety of that section of its brief

to debunking the circumstances its has cherry picked for analysis. In fact, the Illinois Supreme Court has found that in such a situation, an action for unjust enrichment may lie where (1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead, (2) the defendant procured the benefit from the third party through some type of wrongful conduct, or (3) **the plaintiff for some other reason had a better claim to the benefit than the defendant.** *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 161-162 (Ill. 1989) (internal citations omitted, emphasis added).

The third basis for an unjust enrichment claim recognized by the Illinois Supreme Court, that plaintiff has better claim to the benefit than defendant, is applicable here. While the unjust enrichment claim is based in part upon the conduct that makes up plaintiff's fraud count, it is based upon all of the conduct referenced in the complaint, and reading the complaint as a whole, Plaintiff clearly invokes principles by which a determination could be made that Defendant ought not be entitled to profit from its scheme to boost its business by systematically undervaluing vehicles and that Plaintiff, in equity, ought to be entitled to that benefit. Indeed, between Defendant's callous disregard for the rights of insurance claimants in favor of its insurer clients and its "catch me if you can" attitude to those who have the temerity to question its valuations, this court could easily conclude, upon an evaluation of a complete factual record, that Defendant has been unjustly enriched at the expense of Plaintiff and the class.

**C.     Plaintiff Has Standing to Pursue His Illinois Consumer Fraud Act Claim Because The Bulk Of The Circumstances At Issue Occurred in Illinois.**

Defendant's representation that "Plaintiff's Complaint also concedes that the alleged fraud did not occur primarily and substantially in Illinois," is based upon a strained and unreasonable reading of the Complaint. Indeed, a more reasonable reading of the complaint, which alleges a systematic practice of undervaluing vehicles nationwide, is that the alleged fraud did, in fact, emanate from the State of Illinois, in light of the fact that Defendant has its headquarters here and presumably formulates its business plans and strategy here. Under these facts, the Complaint falls into the class of cases expressly carved out in *Avery* as being appropriate for extraterritorial application of the Illinois Consumer Fraud Act.

Defendant narrowly and incorrectly interprets *Avery v. State Farm Mutual Automobile Ins. Co.*, 216 Ill.2d 100 (2005). In fact, *Avery* held that an out-of-state plaintiff *can* state a claim under the IFCA when the "bulk of the circumstances" that made up the subject transaction occurred within Illinois, specifically noting:

> If, for example, the bulk of the circumstances that make up a fraudulent transaction occur within Illinois, and the only thing that occurs out-of-state is the injury or deception, it seems to make little sense to say that the fraudulent transaction has occurred outside of Illinois. Stated otherwise, we believe that there is a broader alternative to the position taken by the *Goshen* court, namely that a fraudulent transaction may be said to take place within a state if the circumstances relating to the transaction occur primarily and substantially within that state.

*Avery*, 216 Ill.2d at 186. If a plaintiff's injury occurs out of state, but the bulk of the circumstances giving rise to that injury occurred in Illinois, that injured plaintiff can rightfully state a claim under the ICFA. *See Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, 564 F.Supp.2d 833, 836 (N.D.Ill. 2008) (denying motion to dismiss claims brought by plaintiff on behalf of a proposed nationwide class under ICFA).[8]

---

[8] The *Stella* opinion does not reference the nationwide class but the complaint, of which this Court can take

Because the Defendant, which is headquartered in Illinois, knowingly and systematically undervalued total loss vehicles in connection with its overarching business plan, Illinois courts have an interest in preventing and correcting CCC's conduct. Moreover, to the extent that Plaintiff's Complaint alleges systematic conduct which includes the outright fabrication of data to back up CCC's purported valuations, it clearly suggests conduct that more logically emanates exclusively from CCC's headquarters in Illinois.[9]   Put another way, if the *actual* local data, such as appraisals performed by people who view a vehicle in person, is substituted with *fabricated* data and the fabricated data is used to support the valuation such that the actual local data is ignored, there no longer exists a real nexus with the local data, suggesting that the scheme is run from a centralized location.[10]

Indeed, a discussion from the *Bunting* case, cited by Defendant, is helpful to the analysis here. In that case, CCC sought to dismiss, at the pleading phase, the ICFA claim of a Michigan resident on the basis that the ICFA could not be applied extraterritorially. The *Bunting* court rejected that argument and overruled the trial court's dismissal of the ICFA claim, noting:

---

judicial notice, seeks certification of a nationwide class. *See, e.g., Cancer Foundation, Inc. v. Cerberus Capital Management LP*, 559 F.3d 671, 676 (7th Cir. 2009) (taking judicial notice of a complaint in a different proceeding where it was, *inter alia*, part of the "public record").

[9] *Phillips v. Bally Total Fitness Holding Corp.*, 372 Ill. App. 3d 53 (Ill. App. Ct. 1st Dist. 2007) does not hold to the contrary. While the *Bally* court did acknowledge that "[t]he place where a company policy was created may be relevant in establishing the situs of a consumer transaction," it ultimately declined to find the ICFA applicable to the plaintiffs' claims upon an express finding that other factors, which included contracts with forum selection clauses, supported a finding that "the overwhelming majority of the circumstances" pertaining to their claims took place outside Illinois." *Bally*, 372 Ill. App. 3d at 58-59. *Bally* is clearly limited to its facts, and neither *Bally* nor *Avery* purport to set forth a bright-line rule that would preclude Plaintiff's claim under the ICFA on *these* facts.

[10] Additionally, Plaintiff's investigation to date suggests that CCC makes suggestions on a broad level with its insurance carrier clients as to what information to capture in its reports to ensure that its valuations come in as low as possible. Because these negotiations happen across entire accounts and are not performed on a valuation-by-valuation basis, the obvious implication is that the practice emanates from CCC's headquarters in Illinois. If necessary, Plaintiff can provide more detail on the likely connection between Defendant's improper conduct and the State of Illinois in an amended pleading.

Considering the allegations in plaintiff's second amended complaint, which we must accept as true for purposes of our review, Illinois has sufficient contacts to plaintiff's claim against CCC. A reasonable inference may be drawn from plaintiff's allegations that CCC's purported policy and practice of intentionally undervaluing vehicles in its valuation reports in order to obtain more insurance company business was designed and implemented by CCC at its principal office in Illinois. As a result, it may be shown that the allegedly deceptive practices were perpetrated in Illinois. We reject CCC's argument that the Act is inapplicable because plaintiff is a nonresident.[11]

*Bunting v. Progressive Corp.*, 348 Ill. App. 3d 575, 586 (Ill. App. Ct. 1st Dist. 2004).

Ultimately, however, whether or not there exists a sufficient nexus to the State of Illinois to justify extraterritorial application of the Illinois Consumer Fraud Act is a question of fact. Discovery in this case is just underway, and it would be inappropriate to conclude, on this paltry record, that there exists no set of facts that would support a finding that the systematic conduct of this Illinois Defendant is sufficiently connected to the State of Illinois to justify the application of the ICFA on a nationwide basis. Indeed, the fact that the *Avery* decision itself was based upon a full factual record and the Illinois Supreme Court expressly left open the possibility that the ICFA could be applied extraterritorially notwithstanding its holding underscores the fact that a more complete factual inquiry must be conducted before the Court can appropriately rule on this issue. Accordingly, Plaintiff should be able to move forward at this stage with factual discovery to further explore whether or not his claim is proper under Illinois law.

     **D.**    **Plaintiff Allegations With Respect To The Breach Of The Duty Of Good Faith And Fair Dealing Are Appropriately Included In His Complaint**

---

[11] Note that although *Bunting* was decided prior to the Supreme Court's decision in *Avery*, because *Avery* does not foreclose the possibility of non-Illinois residents having standing to bring an ICFA claim, the First District's discussion of the issue in *Bunting* is still good law and remains persuasive.

To establish a breach of the duty of good faith and fair dealing under Illinois law, the complaining party must show that the contract vested the opposing party with discretion in performing an obligation under the contract and the opposing party exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties. *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 792-793 (N.D. Ill. 2010) (citations omitted). "'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting." *Id. citing LaSalle Business Credit, Inc. v. Lapides*, 2003 U.S. Dist. LEXIS 2901, *49 (N.D. Ill. Feb. 27, 2003). Clearly, Plaintiff's allegations appropriately invoke this concept. *See* SAC ¶ 38, 40.[12]

## V.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss must be denied.

Dated: September 10, 2010                    Respectfully submitted,

                                             **CAREY, DANIS, & LOWE**


                                             /s/James J. Rosemergy
                                             James J. Rosemergy #6257973
                                             8235 Forsyth, Suite 1100
                                             St. Louis, MO 63105
                                             Phone:       (314) 725-7700
                                             Fax:         (314) 721-0905
                                             jrosemergy@careydanis.com

                                             E. Ryan Bradley #194363
                                             The Bradley Law Firm, L.L.C.
                                             Attorney for Plaintiff

---

[12] In light of the fact that there exists authority making it clear that the duty of good faith and fair dealing is not an independent tort but is instead a concept designed to be used in contract interpretation, Plaintiff is willing to stipulate to dismissal of this claim to the extent it is raised an separate cause of action. To the extent that Plaintiff has, in fact, asserted a cause of action for breach of contract which Defendant has not challenged in its motion, however, Plaintiff asks that these allegations be merged into Count IV, Breach of Contract by Third-Party Beneficiaries.

130 S. Bemiston, Suite 706
Clayton, MO 63105
Phone:        (314) 721-9111
Fax:          (314) 721-9113
ryan@thebradleylawfirm.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 10th day of September, 2010, the foregoing was filed using the Court's ECF system and served upon the following counsel of record thereby:

Mark S. Mester
Mark.Mester@lw.com
Timothy B. Hardwicke
TIM.HARDWICKE@lw.com
Kathleen P. Lally
Kathleen.Lally@lw.com
LATHAM & WATKINS LLP
233 South Wacker Drive, Suite 5800
Chicago, Illinois 60606

Michael F. Dahlen
mdahlen@fmgr.com
FEIRICH/MAGER/GREEN/RYAN
2001 West Main Street
PO Box 1570
Carbondale, IL 62903

/s/James J. Rosemergy